UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LEONA VAN DUSSELDORP,<br><br>              Plaintiff,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY,<br>CNA FINANCIAL CORPORATION, and<br>LONG TERM CARE GROUP, INC.,<br><br>              Defendants. | CIV. 16-5073-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Leona Van Dusseldorp filed a multi-count complaint against the defendants. (Docket 1). Defendant CNA Financial Corporation filed a motion seeking its dismissal. (Docket 19). Plaintiff resists the motion. (Docket 28). For the reasons stated below, defendant's motion to dismiss is granted.

**ANALYSIS**

Plaintiff's complaint asserts the following claims against all defendants: count I, breach of contract; count II, bad faith; count III, misrepresentation under SDCL § 58-33-5; and count IV, declaratory judgment. (Docket 1 at pp. 4-6). The complaint alleges defendant Continental Casualty Company ("Continental") is a corporation and subsidiary of CNA Financial Corporation ("CNA Financial" or "Defendant"). Id. ¶¶ 3 & 4. The complaint alleges Continental and CNA Financial transact the business of insurance and insurance services under the name "CNA," which sold a long-term insurance

policy to Ms. Van Dusseldorp in 2002.  Id. ¶ 6 & 20.  It is alleged Long Term Care Group, Inc., ("LTCG") administers claims for CNA and administered the claim which is the subject of this litigation.  Id. ¶ 14 & 15.  It is further alleged the defendants denied Ms. Van Dusseldorp's claim for long-term care benefits on grounds not appearing in the policy.  Id. ¶ 36.  The complaint makes a number of other allegations not directly related to the issue presented by the motion to dismiss.  Ms. Dusseldorp seeks an interpretation of the insurance policy which is the subject of the litigation, together with compensatory damages, punitive damages and attorney's fees.  Id. at p. 6.  The complaint alleges the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Id. ¶ 19.

PERSONAL JURISDICTION

CNA Financial moves to dismiss the complaint against it pursuant to Fed. R. Civ. P. 12(b)(2).  (Docket 19).  That section provides "a party may assert the following defenses by motion: . . . lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).

In a diversity action the court applies the substantive law of the forum state.  See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002).  "[F]ederal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes." Hanna v. Plumer, 380 U.S. 460, 465 (1965) (referencing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)).  See also In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010) ("in a suit based on diversity of citizenship jurisdiction the

2

federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.") (internal citations omitted). In this case, the forum state is South Dakota, so the court will apply South Dakota law.

South Dakota's long-arm statute provides in relevant part:

Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts:

    (1) The transaction of any business within the state;

    (2) The commission of any act which results in accrual within this state of a tort action; . . .

    (4) Contracting to insure any person, property, or risk located within this state at the time of contracting; . . . [and]

    (14) The commission of any act, the basis of which is not inconsistent with the Constitution of this state or with the Constitution of the United States.

SDCL § 15-7-2. CNA Financial acknowledges "South Dakota's long-arm statute confers jurisdiction to the fullest extent permitted by the Constitution." (Docket 20 at p. 3) (referencing Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995); Ventling v. Kraft, 161 N.W.2d 29, 30 (S.D. 1968)).

The crux of defendant's motion is that the court has no personal jurisdiction over CNA Financial. Id. at p. 1. Defendant asserts it does not have the requisite minimum contacts with South Dakota to be subject to its jurisdiction under to the state's long-arm statute. Id. at pp. 3-5. CNA

3

Financial argues it "simply has no contacts with South Dakota." Id. at p. 5. For this reason, defendant argues the court has neither "general jurisdiction" nor "specific jurisdiction" over it. Id. at pp. 6-9.

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014). "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." Id. That prima facie showing is accomplished by alleging in the complaint sufficient facts to support "a reasonable inference that defendant[] may be subjected to jurisdiction in the forum state." Id. (internal citation omitted). Defendant's challenge to jurisdiction must be supported by affidavits and exhibits. Id. If plaintiff's jurisdictional claim is challenged, plaintiff may not rely only on the pleadings but must present affidavits and exhibits opposing the motion. Id. If no hearing is held on defendant's motion, the court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." Id.

Plaintiff acknowledges the court does not have general jurisdiction over CNA Financial. (Docket 28 at p. 34). She alleges the court has specific

jurisdiction over this defendant because of CNA Financial's "involvement in this dispute." Id. at p. 33.

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . . ." Fastpath, Inc., 760 F.3d at 820 (internal citations omitted). "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." Id. (internal citations omitted). Because South Dakota's long-arm statute expands the state's jurisdiction "to the widest due process parameters allowed by the United States Constitution, [the court's] inquiry is limited to whether the exercise of personal jurisdiction comports with due process." Id. (internal quotation marks and citations omitted).

"Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." Id. (internal references omitted). "Minimum contacts is based on the notion that those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." Id. (internal quotation marks and citation omitted). "Sufficient minimum contacts requires some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 821 (internal quotation marks and citations omitted). "A defendant's contacts

5

with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." Id. at 820-21.

The United States Court of Appeals for the Eighth Circuit "established a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state." Id. at 821. Those factors are: "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties." Id. The district court is directed to "give significant weight to the first three factors." Id.

CNA Financial contends plaintiff does not satisfy any of the Eighth Circuit factors because the defendant:

1. Does not engage in any business in South Dakota;

2. Is not incorporated in South Dakota;

3. Owns no property, has no offices or employees in South Dakota;

4. Is not an insurer or issued an insurance policy in South Dakota or elsewhere;

5. Has never received insurance premiums in any state;

6. Has never hired claims adjusters or adjusted an insurance claim in any state;

7. Is incorporated in Delaware as a publically-traded holding company; and

8. Has its principal place of business in Illinois.

6

(Docket 20 at pp. 4-5) (internal affidavit and exhibits omitted).

Plaintiff counters defendant's position on three theories. (Docket 28 at pp. 4-7). She asserts the evidence supports a claim of specific jurisdiction for the following reasons: (1) joint venture; (2) alter ego or veil piercing; or (3) direct involvement by CNA Financial in Ms. Van Dusseldorp's case. Id. The court will separately address each of these potential grounds for asserting personal jurisdiction.

    A.    JOINT VENTURE

Plaintiff argues CNA Financial acted with Continental to transact business under the name "CNA" to market long-term care policies. Id. at p. 4. Applying South Dakota law, plaintiff asserts that because CNA Financial and Continental are doing business under the CNA umbrella, they are an unincorporated association which may be sued. Id. at 5. Plaintiff's reference is to SDCL § 15-6-17(b) which provides:

> When two or more persons associated in any business, transact such business under a common name, whether it comprises the names of such persons or not, the associates may sue or be sued by such common name, the summons in such cases being served on one or more of the associates. The judgment in the action shall bind the joint property of all the associates, and the individual property of the party or parties served with process, in the same manner as if all had been named defendants and had been sued upon their joint liability.

CNA Financial acknowledges it is the parent company of The Continental Corporation, which is the parent company of Continental. (Docket 20-1 ¶ 3). Defendant admits that CNA is not a company, but rather is a service mark

registered by CNA Financial with the United States Patent and Trademark Office.[1]  Id. ¶ 4.  Along with other CNA Financial subsidiaries, Continental is "permitted to use this service mark and do so in their insurance underwriting and claims activities."  Id.

Plaintiff submits that the December 4, 2015, letter denying her claim for benefits was on CNA letterhead and "signed by Patricia Cephus, Assistant Vice President of Long Term Care Operations for CNA."  (Docket 28 at p. 5) (referencing Docket 28-5).  While the letter specifically indicates it was issued on behalf of Continental, plaintiff claims Ms. Cephus was never an employee of Continental.  Id. (comparing Docket 28-5 to Docket 28-1).  Plaintiff argues that while Ms. Cephus' letter and resume indicate she is employed by CNA, there is no reference in either document to her being employed by Continental, the only entity CNA Financial claims had "any connection" to plaintiff's long-term care policy.  (Docket 28 at p. 5).  Because of this lack of separation, plaintiff contends "the law imputes Continental's contacts with Leona Van Dusseldorp to [CNA Financial]."  Id. at p. 4.

Defendant counters that plaintiff has not presented any evidence which would allow a jury to find that CNA Financial and Continental operate as a joint venture.  (Docket 31 at p. 14).  Defendant contends it "has submitted evidence showing that it *indirectly owns* Continental, and that it has no voice in the

---

[1]Plaintiff erroneously identifies CNA as "a federally registered trademark." (Docket 28 at p. 15).  The court will recognize CNA as a federally registered service mark and identify it as that when referencing plaintiff's arguments.

operation of Continental's insurance business beyond that of any indirect shareholder." Id. (italics in original) (referencing Docket 20-1 ¶ 3). CNA Financial argues "no reasonable jury could conclude that CNAF and Continental have a 'right to share in the profits and a duty to share in any losses' of their alleged joint venture." Id. (citing Harriman v. United Dominion Industries, Inc., 693 N.W.2d 44, 50 (S.D. 2005). Defendant submits "plaintiff has not made a prima facie showing that [CNA Financial] and Continental are, or ever were, members of a joint venture." (Docket 31 at pp. 14-15).

The South Dakota Supreme Court identifies "six elements necessary to establish a joint venture." Harriman, 693 N.W.2d at 50. Those are:

(1) an intent to enter into a joint venture;

(2) an agreement, express or implied, among members of the group;

(3) a common purpose to be carried out by the group;

(4) a joint pecuniary interest in that purpose;

(5) an equal right to a voice in the direction and control of the group; and

(6) a right to share in the profits and a duty to share in any losses.

Id. (internal citation omitted). South Dakota requires that "all six elements must be satisfied in order to establish a joint venture." Id. (internal citation omitted).

In calendar year 2015, Continental did not distribute any of its profits to CNA Financial as dividends or capital distributions. (Docket 20-2 at p. 181). Continental distributed $900,000,000 as dividends to The Continental

9

Corporation.  Id.  How much money, if any, was distributed by The Continental Corporation to CNA Financial as dividends or capital distributions is not part of the record in this case.

Simply because CNA Financial and Continental may have a licensing agreement which permits Continental to use the service mark "CNA" does not create a joint venture.  Nelson v. International Paint Co., Inc., 734 F.2d 1084 (5th Cir. 1984); Torres v. Goodyear Tire & Rubber Co., 867 F.2d 1234 (9th Cir. 1989), rev'd on other grounds, 901 F.2d 750 (9th Cir. 1990); Fletcher v.. Atex, Inc., 68 F.3d 1451 (2nd Cir. 1995); and Yoder v. Honeywell Inc., 104 F.3d 1215, 1222 (10th Cir. 1997).

The court finds plaintiff has not made a prima facie showing that CNA Financial and Continental were engaged in a joint venture so as to allow the court to assert personal jurisdiction over the defendant.[2]  Fastpath, Inc., 760 F.3d at 820.

B.  ALTER EGO OR VEIL PIERCING

Plaintiff contends CNA Financial "uses Continental as a mere instrumentality, so South Dakota law disregards the formal separation of the two entities."  (Docket 28 at p. 5).  Plaintiff argues because Continental's answer

---

[2]Plaintiff fails to acknowledge that if CNA Financial and Continental were an unincorporated association, the court would not have diversity jurisdiction because an unincorporated association is a citizen of every state in which any member is a citizen.  See Stouffer Corp. v. Breckenridge, 859 F.2d 75, 76 (8th Cir. 1989) ("An unincorporated association . . . has traditionally been viewed as a citizen of the state of each of its constituent members.") (referencing United Steelworkers v. R.H. Bouligny, Inc., 382 U.S. 145 (1965) (other citations omitted).

admits jurisdiction and because defendant is the alter ego of Continental, the court has personal jurisdiction over CNA Financial.  Id.

In South Dakota, "[a] parent corporation is liable for the acts of its subsidiary under the instrumentality exception when (1) the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former; and (2) adherence to the rule of corporate separateness would produce injustices and inequities."  Glanzer v. St. Joseph Indian School, 438 N.W.2d 204, 207 (S.D. 1989).  "Similarly, a parent corporation is liable for the acts of its subsidiary when an agency relationship exists between them."  Id. Addressing the first element, the Glanzer court identified factors which should be evaluated to determine the extent of control being exerted by the parent company to make it responsible for the conduct of its subsidiary.   Those are:

(a)     The parent corporation owns all or most of the capital stock of the subsidiary.

(b)     The parent and subsidiary corporations have common directors or officers.

(c)     The parent corporation finances the subsidiary.

(d)     The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e)     The subsidiary has grossly inadequate capital.

(f)     The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g)     The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed.

Id. at 207. Not all eleven factors need be present and the list is not intended to be exhaustive. Id. Each case needs to be resolved on its "own underlying facts." Id.

For convenience the court will use the same alphabetical designation used in Glanzer for identifying plaintiff's argument, but without citation to plaintiff's referenced exhibits. Plaintiff's argument focuses on the following factors:

(a) Parent Ownership. CNA Financial is the parent company of a number of subsidiaries, including Continental, and they all use the same organizational designation, CNA. (Docket 28 at pp. 19-20) They all share the same physical business address, telephone number, and website. Id. CNA Financial appoints an "Executive Vice President, Worldwide Property & Casualty Claim of the CNA Insurance Companies," without having its own property and casualty business. Id. at p. 22. It also has a "President, Long Term Care of the CNA Insurance Companies," although it claims to not be in the long-term care insurance business. Id.

(b) Common Officers and Directors. CNA Financial appoints directors and officers from CNA Financial to serve on the boards of its subsidiaries. Id. at pp. 22-24.

12

(d)  Parent subscribes all of subsidiary's stock. CNA Financial owns The Continental Corporation which owns Continental. (Docket 20-1 ¶ 3).

(h)  Subsidiary's business is parent's own. The CNA association of businesses is the business of CNA Financial. (Docket 28 at p. 22).

(j)  Subsidiary officers do not act independently. The CNA association presents itself as a single company to the world and all the business of the CNA associations is CNA Financial's own business. Id. at p. 31.

Plaintiff cites Parvin v CNA Financial Corp., No. 6:10-cv-6332, 2012 WL 5381568 (D. OR. October 31, 2012) as authority for piercing the corporate veil. (Docket 28 at p. 30). As of the date of its decision in Parvin, the court found that CNA's webpage declared:

> CNA Financial Corporation is one of the largest commercial property and casualty insurance organizations in the United States providing insurance protection to more than one million businesses and professionals in the U.S. and internationally. . . . CNA, a financial holding company, conducts its property and casualty insurance operations primarily through Continental Casualty Company . . . .

Parvin, 2012 WL 5381568, *3 (internal exhibit references omitted). Because plaintiff had shown that nearly all of the officers of Continental and CNA Financial were the same, the Parvin court concluded "[p]laintiff has established sufficient facts to raise a possibility that [Continental] is simply an alter ego of [CNA Financial] . . . ." Id., 2012 WL 5381568, *4.

Plaintiff acknowledges the language cited in Parvin is no longer on CNA Financial's website. (Docket 28 at p. 31). Plaintiff contends, however, that "Loews Corporation [which] owns 90% of [CNA Financial's] stock," has a website

with "that same language."[3] Id. According to plaintiff, Loews Corporation's website contains the following declaration:

> CNA Financial Corporation is one of the largest property and casualty insurance organizations in the United States, providing insurance protection to more than one million businesses and professionals in the U.S. and internationally. CNA's insurance products include standard commercial lines, specialty lines, surety, and other property and casualty coverages. CNA also provides customers with risk management and information services, risk control, warranty and claims administration services.

Id. at pp. 31-32 (internal reference omitted). Plaintiff argues she has shown that CNA Financial "functions as a single business with its subsidies as segments." Id. at p. 32. Plaintiff contends "[a] jury could reasonably draw the same conclusion." Id.

Defendant counters plaintiff's argument by addressing the same factors and other factors not addressed by plaintiff:

(a) <u>Parent Ownership</u>. Continental is a subsidiary of a subsidiary of CNA Financial and plaintiff offered no proof that it owns any of Continental's stock. (Docket 31 at p. 9).

(b) <u>Common Officers and Directors</u>. While CNA Financial and Continental have common directors, there is no evidence that they are not wearing their "subsidiary hats" and not the "parents hats" when conducting business. Id. at p. 10.

(d) <u>Parent subscribes all of subsidiary's stock</u>. Same argument as subsection (a) above.

(e) <u>Inadequate capital</u>. According to Continental's December 31, 2015, annual statement it "has Net Admitted Assets of

---

[3]<u>See</u> Docket 20-2 at p. 15 ("Loews Corporation . . . owns approximately 90% of the outstanding common stock of [CNA Financial] as of December 31, 2015.")

> $43,531,436, 609." (Docket 20-1 ¶ 22); see also Docket 31 at p. 11.
>
> (j) <u>Subsidiary officers do not act independently</u>. Same argument as subsection (b) above.

Defendant argues plaintiff has not satisfied the first prong of the test to pierce the corporate veil and failed to address the second prong—"piercing the veil is necessary to avoid injustice." Id. at p. 11. Because of Continental's assets strength, defendant contends that if plaintiff were to recover a judgment against Continental, it "would be able to pay [the judgment] hundreds of times over." Id.

Plaintiff did not provide any evidence addressing the following <u>Glanzer</u> factors:

> (c) Parent finances the subsidiary.
>
> (f) Parent pays the salaries, expenses or losses of the subsidiary.
>
> (g) Subsidiary has no business apart from parent.
>
> (i) Parent uses subsidiary's property as its own.
>
> (k) Legal requirements of the subsidiary not observed.

The court finds these factors are important to the analysis. The record discloses that Continental generates millions of dollars through its own business and pays its own salaries and expenses. (Docket 20-1). There is no evidence that the defendant finances the business of Continental or uses Continental's property as its own. Because there is evidence of independence and self-sufficiency on the part of Continental, the absence of any evidence that the subsidiary's officers

15

and directors are not acting in the best interest of Continental when wearing their "subsidiary hats" or failing to honor the legal requirements of Continental's governing rules is significant. United States v. Bestfoods, 524 U.S. 51, 69-70 (1998). "[T]here is no showing that the subsidiary is a dummy or a sham corporation or undercapitalized." McAllister-Lewis v. Goodyear Dunlop Tires N. Am., Ltd., CIV 14-4103, 2017 WL 2312232, at *3 (D.S.D. May 24, 2017).

The court finds Continental is not a "mere instrumentality" of CNA Financial. Glanzer, 438 N.W.2d at 207. The court further finds "adherence to the rule of corporate separateness" will not create any injustice in the case. Id. Plaintiff's objection to defendant's motion on the basis of piercing the corporate veil is denied.

    C.    DIRECT INVOLVEMENT IN PLAINTIFF'S CASE

Plaintiff argues CNA Financial was directly involved in Ms. Van Dusseldorp's case for a number of reasons. (Docket 28 at p. 25). Those reasons are:

1. The policy, while underwritten by Continental, contained the "CNA" service mark which belonged to CNA Financial. Id. (referencing Docket 20-3 at p. 1);

2. The policy directs expenses be submitted to "CNA Insurance." Id. (referencing Docket 20-4 at p. 8);

3. All correspondence contained the "CNA" service mark, which is owned by CNA Financial. Id. at p. 26;

4. Correspondence directed to Ms. Van Dusseldorp came from CNA Financial "or the unincorporated association." Id. at p. 27 (referencing Docket 28-15);

5. Correspondence referred to "CNA" 40 times while only mentioning Continental as the underwriter twice. Id. (referencing Docket 28-15);

6. The denial letters came from CNA Financial, not Continental, and were signed by an individual from "Claims Support, Long Term Care Claims Department." Id. at pp. 26-27; and

7. All correspondence directed responses be sent to "CNA Claims Administration," not Continental. Id. at p. 27 (referencing Dockets 280-5, 28-16, 28-17, 28-18, 28-19).

Plaintiff argues these facts satisfied her obligation to produce prima facie evidence that CNA Financial "was involved in her case." Id. at p. 31.

Defendant counters plaintiff's argument contending plaintiff's evidence is "devoid of any mention of [CNA Financial]." (Docket 31 at p. 6). CNA Financial contends plaintiff's argument it "has claimed responsibility for the denial letters" is without merit. Id. (italics omitted). Defendant argues it "submitted evidence that it did not send the denial letters . . . and plaintiff has failed to meet her burden of submitting contradictory evidence." Id. at pp. 6-7 (italics omitted) (referencing Docket 20-1 ¶ 20).

Plaintiff ignores the fact the first line of the policy in bold print identifies the issuer as "Continental Casualty Company." (Docket 20-3 at p. 1) (bold omitted). The policy identifies Continental as "A Stock Company." Id. While the policy directs any questions to a Nashville, Tennessee, address, there is no mention of CNA Financial or any other CNA company. Id.; see also id. at pp. 12 & 17-18. The policy is signed on behalf of Continental by "Cathy Klimek," who

is identified as a "Senior Operations Officer," again, with no mention of any other CNA company or CNA Financial. Id.; see also id. at pp. 22-23.

While correspondence directed to Ms. Van Dusseldorp does contain the "CNA" service mark, it also specifically identified the company of origination as "Continental Casualty Company." See, *i.e.*, Dockets 28-15 at p. 2; 28-16 at p. 2; 28-17 at p. 2; 29-19 at p. 2. In only one piece of correspondence was "CNA" identified without reference to Continental. See, *i.e.*, Dockets 28-18 at p. 2.

The court finds plaintiff has not made a prima facie showing that CNA Financial was directly involved in the issuance of Ms. Dusseldorp's policy or processing her benefits claims so as to allow the court to assert personal jurisdiction over the defendant. Fastpath, Inc., 760 F.3d at 820.

OTHER MOTIONS

CNA Financial also filed motions pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). (Docket 19). Because the court concludes it has no personal jurisdiction over CNA Financial, the court has no jurisdiction to resolve defendant's other motions. These motions are denied as moot.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant CNA Financial Corporation's motion to dismiss on the basis of Fed. R. Civ. P. 12(b)(2) (Docket 19) is granted.

IT IS FURTHER ORDERED that the remainder of defendant CNA Financial Corporation's motion to dismiss (Docket 19) is denied as moot.

IT IS FURTHER ORDERED that CNA Financial Corporation is dismissed as a defendant.

Dated September 11, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE