UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LEONA VAN DUSSELDORP,<br><br>Plaintiff,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY, and LONG TERM CARE GROUP, INC.,<br><br>Defendants. | 5:16-CV-05073-JLV<br><br><br>REPORT AND RECOMMENDATION AS TO MOTIONS FOR JUDGMENT AS A MATTER OF LAW<br>(DOCS. 45, 50, & 53) |

**INTRODUCTION**

This is a diversity action before the court on Plaintiff Leona Van Dusseldorp's complaint alleging breach of contract, bad faith, and misrepresentation regarding a long term care policy issued by Defendant Continental Casualty Co. (hereinafter "CCC") and serviced by Defendant Long Term Care Group, Inc. (hereinafter "LTCG"). Plaintiff also seeks a declaratory judgment from the court regarding the rights and obligations of the parties under the terms of the contract.

Plaintiff has moved for partial summary judgment requesting a finding that the facility Ms. Van Dusseldorp resided at fits within the policy definition of an "Assisted Living Center." (Doc. 45). Defendants oppose the motion, and filed a cross motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56 on all of Plaintiff Van Dusseldorp's claims. (Doc. 50 and Doc 53). Plaintiff resists Defendants' motion. (Doc. 60).

1

## MATERIAL FACTS[1]

Defendant Continental Casualty Company (hereinafter "CCC") issued a long term care policy to Plaintiff Leona Van Dusseldorp with an effective date of February 1, 2002. (Doc. 18 at ¶ 20; Doc. 54-2, ¶1).

On November 5, 2014, Ms. Van Dusseldorp, age 86, had an appointment with her physician, Dr. Jerome Bentz. Dr. Bentz administered a Montreal

---

[1] Local Rule of Civil Procedure 56.1 provides:
> **A. Moving Party's Required Statement of Material Facts.**
> All motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Each material fact must be presented in a separate numbered statement with an appropriate citation to the record in the case.
> **B. Opposing Party's Required Statement of Material Facts.**
> A party opposing a motion for summary judgment must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record. A party opposing a motion for summary judgment must identify any material facts on which there exists a genuine material issue to be tried.
> **C. Use of Documentary Evidence.** A party must attach to an affidavit all relevant documentary evidence in support of or in opposition to a motion for summary judgment. The evidence should be submitted with proper highlighting or underlining as encouraged by D.S.D. Civ. LR 7.1B2.
> **D. Effect of Omission: Sanction.**
> All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts.

Here, the Plaintiff included a lengthy, and largely irrelevant, narrative in her Motion for Partial Summary Judgment. (Doc. 45). In support of the motion, Plaintiff filed an eight-paragraph Statement of Undisputed Facts. (Doc. 46). The vast majority of "facts" are attached as exhibits to the motion for summary judgment, or exhibits to the Statement of Undisputed Facts. This is improper, as it precludes the opposing party from identifying what facts are undisputed and which are disputed. The majority of Plaintiff's facts are not properly in the record. To compound the problem, Defendant CCC filed a Statement of Undisputed Material Facts (Doc. 54-2), to which the Plaintiff failed to respond to as required by LR 46.1(B).

Cognitive Assessment test, concluded that Ms. Van Dusseldorp suffered from "Mild memory loss – I think likely early Alzheimer dementia" and thought it would be "appropriate for Leona to enter the assisted living/independent living facility." (Doc. 45-10). Dr. Bentz noted that her cognitive issues were mild deficits and that Ms. Van Dusseldorp seemed to be aware of them. (Id.).

Ms. Van Dusseldorp moved into Tender Loving Care Independent Living (hereinafter "TLC") in Platte, South Dakota on November 6, 2014. (Doc 45-18; Doc. 49-18). TLC is a registered South Dakota Residential Living Center in Platte, South Dakota. (Doc. 49 at p. 10; Doc. 54-2; Doc. 45-21).

In December of 2014, a third party performed a benefit eligibility assessment for CNA. The assessment and Personal Care needs and Services found that Ms. Van Dusseldorp needed minimal assistance with dressing hands-on assistance from another to complete bathing; she scored 18 out of 30 on the Mini Mental Evaulation; needed assistance with fasteners, buttons, snaps or zippers approximately two times per week; and she needed staff cues to remind her to eat. (Doc. 45-11; Doc. 54-2; 54-7). Ms. Van Dusseldorp submitted a claim for policy benefits. (Doc. 54-2). CCC's Internal Plan of Care concluded, "it appears that clmt meets eligibility due to Cognitive Impairment, however, as an ineligible provider is being utilized at this time, the claim will be put in denied status due to ineligible provider- this claim will be reviewed again at the time an eligible provider is put into place." (Doc. 60-1).

On January 12, 2015, CCC, through its third-party claims administrator, Defendant Long Term Care Group (hereinafter "LTCG") formally denied the

3

claim stating that the provider, TLC, did not meet the policy requirements as either a Long Term Care Facility or an Assisted Living Center.  (Doc. 54-11).  The denial letter notified Ms. Van Dusseldorp of her right to an internal review of the decision, as well as the right to pursue an administrative review with the South Dakota Department of Insurance.  (Id.)  Ms. Van Dusseldorp's daughter requested that CCC consider benefits under an Alternate Plan of Care Benefit, to allow Ms. Van Dusseldorp to receive policy benefit for residing at TLC.  On March 19, 2015, CCC declined to allow this discretionary benefit and enclosed a list of Long Term Care Facilities or Assisted Living Centers which would be covered under the policy.  (Doc. 54-12).

Ms. Van Dusseldorp resided at TLC until March of 2017, at which time she moved to Twilight Vista Assisted Living, a licensed South Dakota Assisted Living Center, also located in Platte, South Dakota.  (Doc. 54 at ¶ 37).  CCC is paying policy benefits associated with her care at Twilight Vista Assisted Living.  (Doc. 54 at ¶ 38).

## STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v.

4

Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(e) (stating that each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

5

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.

## DISCUSSION

The interpretation and construction of the terms of an insurance contract are questions of law. Grovenburg v. Homestead Ins. Co., 183 F.3d 883, 885 (8th Cir. 1999). In a diversity action the court applies the substantive law of the forum state. See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002). "[F]ederal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes." Hanna v. Plumer, 380 U.S. 460, 465 (1965) (referencing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)); see also In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010) ("[I]n a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.") (internal citations omitted). In this case, the forum state is South Dakota, so the court will apply South Dakota law.

### A. Breach of Contract Claim

To prevail on her breach of contract claim, Ms. Van Dusseldorp must show (1) an enforceable promise; (2) that defendant breached that promise; and (3) she suffered damages as a result of defendant's breach. See Bowes Constr., Inc. v. S.D. Dep't of Transp., 793 N.W.2d 36, 43 (S.D. 2010) (citing Guthmiller v. Deloitte & Touche, LLP, 699 N.W. 493, 498 (S.D. 2006)); Lillibridge v. Meade School Dist. #46-1, 746 N.W.2d 428, 431 (S.D. 2008). "If undisputed facts fail

6

to establish each required element in a cause of action, summary judgment is proper." McKie v. Huntley, 620 N.W.2d 599, 603 (S.D. 2000).  Here, neither defendant disputes that the insurance policy constitutes an enforceable promise.  Therefore, this court need only analyze whether defendants breached its promise to Ms. Van Dusseldorp, and if so, whether she suffered damages as a result of that breach.  In this regard, each party raises numerous argument for and against the entry of summary judgment.

### 1. Whether TLC falls within the policy definition of an Assisted Living Facility.

In order to be eligible for the payment of benefits under the policy, "a Licensed Health Care Practitioner must certify that care or services are required because [the insured is] Chronically Ill."  (Doc. 54-10 at p. 10).  Once eligible, the following categories of benefits are available: Home and Community-Based Care Benefits (Doc. 54-10 at pp. 11-12), Informal Caregiver Support Benefits (Doc. 54-10 at p. 13), **Facility Benefits** (Doc. 54-10 at p. 13), Waiver of Premium Benefit (Doc. 54-10 at p. 14), and Alternate Plan of Care Benefits (Doc. 54-10 at p. 14) (emphasis added).  Presumably, given the causes of action in her Complaint and the parties summary judgment briefings, Ms. Van Dusseldorp made a claim for facility benefits.  Under this category, benefits are paid, "[f]or each day Qualified Long Term Care[2] is received in a

---

[2]    Qualified Long Term Care is defined as, "Necessary diagnostic, preventive, therapeutic, curing treating, mitigating, and rehabilitative services, and Maintenance or Personal Care Services, which: 1) Are required by a Chronically Ill Individual, and 2) Are provided pursuant to a Plan of Care prescribed by a Licensed Health Care Practitioner."  (Doc. 54-10 at p. 9).  The record is scant regarding whether Ms. Van Dusseldorp qualified as a Chronically Ill Individual, and neither party has asked to court to determine whether she either met or was excluded by

Long Term Care Facility or Assisted Living Center." Neither party asserts that TLC is a Long Term Care Facility. However, the parties argue at length whether TLC falls within the policy definition of an Assisted Living Center. The policy defines an Assisted Living Center as:

> Any institution, rest home, boarding home, place, building or agency which is maintained and **operated to provide personal care and services which meet some need beyond basic provision of food, shelter, and laundry** to five or more persons in a free-standing, physically separate facility which is not otherwise required to be licensed under Chapter 34-12 of South Dakota statutes.

(Doc. 54-10 at p. 5) (emphasis added). Ms. Van Dusseldorp argues that TLC is a Residential Living Center which provided personal care or daily living services consistent with the plain, ordinary meaning of "personal care and services which meet some need beyond basic provision of food, shelter, and laundry," as set forth in the policy.

CCC argues that under South Dakota law, specifically SDCL §§ 34-12-1.1 and 34-12-32, "residential living centers" and "assisted living centers" are entirely separate entities, and under the applicable facts, Ms. Van Dusseldorp's policy only provides coverage for assisted living centers. CCC argues that under SDCL § 34-12-32, residential living centers can only provide "room, meals, and daily living services, but not habilative or health care." CCC argues that "daily living services" do not constitute "personal care and services." In contrast, SDCL § 34-12-1.1 defines "assisted living centers" as any place which

---

this definition. However, given the court's ruling as discussed *infra*, it is not necessary to analyze this issue.

provides "personal care and services which meet some need beyond basic provision of food, shelter, and laundry."  Since the policy language mirrors the statutory definition of an assisted living center, CCC argues that TLC does not qualify for coverage because it is registered with the State of South Dakota as a "residential living center" not an "assisted living center," so it cannot provide "personal care and services."  CCC argues that the services TLC provides are more basic than "personal care and services."

Ms. Van Dusseldorp responds that the policy controls, instead of South Dakota statutes defining "assisted living center" and "residential living center."  Further, she argues that even if the state statutes and regulatory definitions were applicable, TLC would still qualify as an assisted living center because the policy provides broader coverage than the statute.  Ms. Van Dusseldorp reiterates that TLC is covered under the policy because ordinary usage of the phrase "personal care and services," combined with SD regulatory agencies' definitions of "personal care" and/or "services," include assistance with basic living skills like dressing, grooming, bathing, personal hygiene, housekeeping, etc.  Ms. Van Dusseldorp argues that TLC provides these services and therefore is covered under the policy.

When interpreting a contract, "effect will be given to the plain meaning of its words."  In re Dissolution of Midnight Star, 724 N.W.2d 334, 337 (S.D. 2006).  Courts must "give effect to the language of the entire contract and particular words and phrases are not interpreted in isolation."  Id. (internal citation omitted).  When provisions of a contract conflict, the more specific

9

provision controls the more general provision. Spiska Eng'g, Inc. v. SPM Thermo-Shield, Inc., 730 N.W.2d 638, 645 (S.D. 2007). Courts look "to the language that the parties used in the contract to determine their intention." Pauley v. Simonson, 720 N.W.2d 665, 667-68 (S.D. 2006). The insurance policy must be interpreted to give effect to each provision in the policy, and no single provision should be construed in isolation. Prokop v. North Star Mut. Ins. Co., 457 N.W.2d 862, 866 (S.D. 1990).

If the language of the contract is clear and unambiguous, "it is the duty of [the] Court to declare and enforce it." Pauley, 720 N.W.2d at 668. However, if the contract is ambiguous, then "parol and extrinsic evidence may be utilized 'to show what [the parties] meant by what they said[.]' " Id. (quoting Jensen v. Pure Plant Food Internatl., Ltd., 274 N.W.2d 261, 264 (S.D. 1979)). "[A]n insurance policy is ambiguous when it is fairly susceptible to two constructions." Fall River Co. v. South Dakota Public Assur. Alliance, 623 N.W.2d 735, 737 (S.D. 2001). If an insurance contract is ambiguous, it is construed liberally in favor of the insured and strictly against the insurer. Ass Kickin Ranch, LLC, 822 N.W.2d at 727 (S.D. 2012); Pete Lien & Sons, Inc. v. First American Title Ins., Co., 478 N.W.2d 824, 827 (S.D. 1991). This is because the "language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it." Mut. Life Ins. v. Hurni Packing Co., 263 U.S. 167, 174 (1923). However, the court may not seek out a "strained or unusual meaning for the benefit of the insured." Chord v. Reynolds, 587

N.W.2d 729, 732 (S.D. 1999).  Where there is no ambiguity, however, like any other contract, an insurance policy is construed according to the plain and ordinary meaning of its words.  Pete Lien & Sons, Inc., 478 N.W.2d at 827.

### 2. The Policy's Definitions of "Home" and "Facilities"

To determine whether TLC is an assisted living center as defined by the policy, the court must first consider the definition in the context of the entire policy.  The policy provides various categories of benefits which correspond to a claimant's level of needed care.  For example, there are Home and Community-Based Care Benefits, Informal Caregiver Support Benefits, and Facility Benefits.  The policy defines each benefit category.  The policy's definition of the term "Home" is significant, which is: "1) Your residence; 2) A private home; 3) A home for the retired or aged; 4) **A place which provides residential care**; or 5) A section of a nursing facility providing only residential care."  (Doc. 54-10 at p. 7) (emphasis added).  In comparing the definition of "home benefits" with the definition of "assisted living center," it is clear that accepting Ms. Van Dusseldorp's reading of the policy would construe a single provision in isolation, resulting in a strained or unusual meaning for the benefit of the insured.  TLC is a registered South Dakota Residential Living Center.  This is consistent with the policy's definition of "a place which provides residential care."  To classify it as an assisted living center would render the definition of home meaningless.  The policies' provisions and terms, when read as a whole, are not susceptible to two interpretations and thus are unambiguous.

11

The court's interpretation is consistent with South Dakota's statutory and regulatory schemes. Under South Dakota law, Assisted Living Centers are required to be licensed and they must provide personal care and services. SDCL § 34-12-1.1(2). By contrast, Residential Living Centers such as TLC are not allowed to provide "personal care and services." Instead, they are only authorized to provide "room, meals, and daily living services, but not habilitative or heath care." SDCL § 34-12-32. "Daily living services" encompass far less assistance than the more involved definition of "personal care and services." Compare ARSD 44:23:01:05 with ARSD 20:06:21:50.

Accepting Ms. Van Dusseldorp's argument that TLC qualifies as an assisted living facility under the policy because it she believes it provides services not allowed by South Dakota regulations would produce an interpretation that amounts to an absurdity, as cautioned against by Ass Kickin Ranch, LLC v. North Star Mut. Ins. Co., 822 N.W.2d 724 (S.D. 2012).

Because the court finds that Defendants did not breach the contract as a matter of law, they are entitled to summary judgment on all of plaintiff's claims.

## **CONCLUSION**

Based on the foregoing discussion, this Court respectfully recommends that Plaintiff's partial for summary judgment (Doc. 49) be denied and that Defendants' motions for summary judgment (Doc. 50 and Doc. 53) be granted.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 30th day of March, 2018.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge