UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LEONA VAN DUSSELDORP,<br><br>Plaintiff,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY and LONG TERM CARE GROUP, INC.,<br><br>Defendants. | CIV. 16-5073-JLV<br><br>ORDER |

**INTRODUCTION**

This is a diversity action before the court on Plaintiff Leona Van Dusseldorp's complaint alleging breach of contract, bad faith, and misrepresentation regarding a long term care policy issued by Defendant Continental Casualty Co. (hereinafter "Continental") and serviced by Defendant Long Term Care Group, Inc. (hereinafter "LTCG"). Plaintiff also seeks a declaratory judgment regarding the rights and obligations of the parties under the terms of the contract.

Pending before the court is plaintiff Leona Van Dusseldorp's motion for partial summary judgment. (Docket 45). Defendant Continental cross-moved for summary judgment. (Docket 50). Defendant LTCG moved to join Continental's cross-motion for summary judgment. (Docket 53). Plaintiff contests defendants' motion for summary judgment. (Docket 60). The court referred the motions to United States Magistrate Judge Daneta Wollmann pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of March 9, 2015.

(Docket 68). The magistrate judge issued a report and recommendation ("R&R") concluding the court should deny plaintiff's motion for partial summary judgment and grant defendants' motion for summary judgment. (Docket 98 at p. 12). Plaintiff filed timely objections to the R&R and defendants responded to plaintiff's objections. (Dockets 102 & 105).

The court reviews *de novo* those portions of the R&R which are the subject of objections. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court completed a *de novo* review of those portions of the R&R to which objections were filed. The court finds the R&R is an appropriate application of the law to the issues presented by the parties. For the reasons stated below, the plaintiff's objections are overruled and the R&R is adopted as supplemented and modified by this order.

## PLAINTIFF'S OBJECTIONS

At the outset, the court will address defendants' contention that the plaintiff's objections to the R&R do not merit *de novo* review. (Docket 105 at pp. 2-3). Defendants argue plaintiff's objections are not sufficiently specific under Fed. R. Civ. P. 72(b)(2) and the objections merely restate arguments made to the magistrate judge. Id. The court finds plaintiff's objections are reviewable.

Plaintiff does restate arguments in her objections to the R&R in support of her motion for partial summary judgment. Compare Docket 45 at pp. 13-16,

with Docket 102 at pp. 13-25. The R&R did not fully examine the arguments which plaintiff raised in the first instance and now repeats in her objections. For the sake of completeness, the court will review, *de novo*, all of plaintiff's objections to the R&R. Those objections are summarized as follows:

1. TLC Independent Living ("TLC") and its provided services fall within the definition of an Assisted Living Center as stated in the long-term care policy. (Docket 102 at pp. 13-25).

2. The terms of the policy control and the magistrate judge erred in considering external statutory and regulatory authority in interpreting the policy. Id. at pp. 30-31.

3. The magistrate judge erred in finding TLC could not qualify as an Assisted Living Center because a separate benefit provided under the policy, the home and community-based care benefit, also encompasses residential care facilities. Id. at pp. 25-30.

4. The magistrate judge erred in finding plaintiff's argument that TLC provides services which may be impermissible under South Dakota law amounts to an absurdity. Id. at pp. 38-39.

5. The magistrate judge erred because plaintiff would be entitled to payment under the policy's home and community-based care benefit for TLC's residential care services. Id. at pp. 39-41.

Plaintiff also raises several policy arguments against what she sees as defendants' concerted scheme to incorporate state statutory and regulatory definitions into insurance policies as a method of increasing claim denials. Id. at pp. 1 and 8. The court finds these arguments are not relevant to the legal question of contract interpretation at issue here and will not address them.

Plaintiff did not object to the magistrate judge's findings of fact. See Docket 102. The court adopts the material facts set forth in the R&R. (Docket 98 at pp. 2-4).

**ANALYSIS**

The court's jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). (Docket 1 ¶¶ 1, 3, 13, 18-19). "It is a long-recognized principle that federal courts sitting in diversity apply state substantive law and federal procedural law." Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) (internal citation and quotation marks omitted). The parties acknowledge the interpretation of the long-term care policy at issue here is governed by the substantive laws of the state of South Dakota. (Dockets 45 at p. 16 & 54-1 at pp. 11-16).

**A.   STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at p. 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at p. 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at pp. 251-52.

**B.  Plaintiff's Objections**

Plaintiff filed a diversity action against defendants[1] alleging breach of contract, bad faith, and misrepresentation regarding a long-term care policy issued by defendant Continental and administered by defendant LTCG. (Docket 1). Plaintiff also seeks a declaratory judgment as to the parties' rights

---

[1] Plaintiff also included CNA Financial Corp. ("CNA") as a defendant in her complaint. CNA moved to dismiss all of plaintiff's claims against it and the court granted that motion. (Dockets 19 & 63).

and obligations under the policy. Id. Plaintiff's motion for partial summary judgment specifically seeks a declaration that TLC qualifies as an "Assisted Living Center" under the terms of the policy. (Docket 45). The R&R concludes that defendants, as a matter of law, did not breach the long-term care policy when they denied payment for the expenses Ms. Van Dusseldorp incurred during her stay at TLC. (Docket 98 at 12). As a result, the R&R recommended summary judgment be granted to defendants on all of plaintiff's claims. Id.

Under South Dakota law, the elements of a breach of contract are "(1) an enforceable promise; (2) a breach of the promise; and, (3) resulting damages." Bowes Constr., Inc. v. S.D. Dep't. of Transp., 793 N.W.2d 36, 43 (S.D. 2010) (citing Guthmiller v. Deloitte & Touche, L.L.P., 699 N.W.2d 493, 498 (S.D. 2005)). Whether the insurance contract was breached is the primary point of contention in this case. Resolving this dispute requires an interpretation of the policy, which is a question of law. W. Nat'l Mut. Ins. Co. v. TSP, Inc., 904 N.W.2d 52, 56 (S.D. 2017) (citing Swenson v. Auto Owners Ins. Co., 831 N.W.2d 402, 412 (S.D. 2013)); Grovenburg v. Homestead Ins. Co., 183 F.3d 883, 885 (8th Cir. 1999).

With this background in mind, the court will analyze plaintiff's objections to the R&R individually.

### 1. Whether TLC falls within the policy's definition of "Assisted Living Center"

Under the policy, an insured is eligible for benefits when "certified as Chronically Ill by a Licensed Health Care Practitioner . . . ." (Docket 45-3 at

p. 8). The policy specifies five different types of benefits. Id. at pp. 13-16. The parties primarily contest whether plaintiff's stay in TLC qualifies for the Facility benefit. This benefit is paid "for each day Qualified Long Term Care is received in a Long Term Care Facility or Assisted Living Center." Id. at p. 15. Neither party argues that TLC is a long-term care facility; rather, they contest whether TLC falls within the policy's definition of Assisted Living Center.

> An Assisted Living Center is defined as:
>
> Any institution, rest home, boarding home, place, building or agency which is maintained and operated to provide personal care and services which meet some need beyond basic provision of food, shelter and laundry to five or more persons in a free-standing, physically separate facility which is not otherwise required to be licensed under Chapter 34-12 of South Dakota statutes.

Id. at p. 7. Ms. Van Dusseldorp argues TLC meets this definition by providing "personal care and services" such as grocery shopping, meal preparation and administering medication.[2] (Docket 102 at pp. 13-17). Defendants argue the policy's definition of Assisted Living Center is "materially the same" as the definition of Assisted Living Center, a type of regulated medical institution, under South Dakota law. (Docket 105 at p. 7). In defendants' view, the policy tracks South Dakota law and only entities licensed as Assisted Living Centers by the state of South Dakota qualify as Assisted Living Centers under the policy. It is undisputed that TLC is registered as a residential living center, not an Assisted Living Center, under South Dakota law. (Docket 100 ¶ 15).

---

[2]The parties agree TLC is "an institution, place, and a building" that "is operated to serve more than five people" and that "operates in a free-standing, physically separate facility." (Dockets 46 & 51).

"The court in reviewing a policy provision in light of statutory law treats the statute as if it were actually written into the policy." Kremer v. American Family Mut. Ins. Co., 501 N.W.2d 765, 768 (S.D. 1993). South Dakota law requires that long-term care insurance policies include benefits for state-licensed Assisted Living Centers.[3] ARSD 20:06:21:51. Plaintiff notes the policy did not explicitly require that long-term care facilities possess a South Dakota Assisted Living Center license to qualify for benefits, but it is evident that Continental copied the statutory language almost word-for-word to conform with South Dakota law. (Docket 105 at p. 5). "[I]nsurance policies must be subject to a reasonable interpretation and not one that amounts to an absurdity." Ass Kickin' Ranch, LLC v. N. Star Mut. Ins. Co., 822 N.W.2d 724, 727 (S.D. 2012) (quoting Prokop v. N. Star Mut. Ins. Co., 457 N.W.2d 862, 864 (S.D. 1990)). It would be unreasonable and absurd to interpret the policy to require Continental to pay benefits targeted at licensed South Dakota Assisted Living Centers to an unlicensed entity. The court overrules plaintiff's objection.

2. **Whether the magistrate judge erred in considering external statutory and regulatory authority in interpreting the policy**

Plaintiff argues the R&R "seems to assume that [South Dakota] statutory and regulatory schemes override the policy's own definition of Assisted Living

---

[3]Plaintiff argues South Dakota law does not actually require that Assisted Living Centers be state licensed. (Docket 102 at p. 34). This contention is incorrect. South Dakota law mandates no "health care facility" may be operated in South Dakota without a license from the state Department of Health. SDCL § 34-12-2. The term "health care facility" is defined to include Assisted Living Centers. Id. § 34-12-1.1(2).

Center." (Docket 102 at p. 30). In plaintiff's view, the magistrate judge could only look to South Dakota law in interpreting the policy if it had "clearly and unmistak[]ably" incorporated that law. Id. at p. 19. Plaintiff also argues adopting the R&R's use of external authority in interpreting the policy will lead to "[u]necessary complications, effort, and risk of error." Id. at p. 34.

It is certainly true that "[t]he scope of coverage of an insurance policy is determined from the contractual intent and the objectives of the parties as expressed in the contract." Dakota Fire Ins. Co. v. J & J McNeil, LLC, 849 N.W.2d 648, 650 (S.D. 2014) (quoting Quinn v. Farmers Ins. Exch., 844 N.W.2d 619, 623 (S.D. 2014)). This principle does not bar courts from looking to statutory law when appropriate as an interpretive aid. State Farm Mut. Auto Ins. Co. v. Vostad, 520 N.W.2d 273, 275-76 (S.D. 1994) ("Where it is necessary to review an insurance policy provision in light of statutory law, the court treats the statute as if it were actually written into the policy."); see also 11 Williston on Contracts § 30:19 (4th ed.) ("Except when a contrary intention is evident, the parties to a contract . . . are presumed or deemed to have contracted with reference to existing principles of law.").

As noted above, Continental consciously incorporated South Dakota law in drafting the policy's definition of Assisted Living Center, making it necessary to review the policy in light of South Dakota law on Assisted Living Centers. The policy does not indicate the parties intended to supplant or ignore then-existing South Dakota law. The magistrate judge was justified in looking to South

9

Dakota law to interpret the policy. Plaintiff's objection to the R&R's use of external statutory and regulatory authority is overruled.

> **3. Whether the magistrate judge erred in finding TLC could not qualify as an Assisted Living Center because the Home benefit also encompasses residential care facilities**

The magistrate judge concluded that TLC cannot fall within the policy's definition of Assisted Living Center because doing so would render a separate policy benefit, the home and community-based care benefit ("Home benefit"), superfluous. (Docket 98 at p. 11). The Home benefit is provided when an insured receives qualified long-term care in the insured's home or in an adult day care facility. (Docket 45-3 at p. 8). "Home" is defined under the policy as

1. Your residence;
2. A private home;
3. A home for the retired or aged;
4. A place which provides residential care; or
5. A section of a nursing facility that provides only residential care.

Id. at p. 9. Hospitals are explicitly excluded from the definition. Id. The magistrate judge found TLC, as a registered South Dakota residential living center, was more properly classified as a place which provides residential care under the policy's definition of "home" as it pertains to the Home benefit, as opposed to an Assisted Living Center. (Docket 98 at p. 11). The R&R reasoned that to classify TLC as an Assisted Living Center would "render the definition of home meaningless." Id.

Plaintiff argues the magistrate judge's conclusion renders the Facility benefit "an empty category" because any location where an insured lives is a

10

residence that fits within the policy's definition of "home." (Docket 102 at pp. 27-28). Plaintiff contends interpreting the policy to forbid one long-term care facility from qualifying for benefits under both the Facility and Home benefits would render the Facility benefit "illusory" and violate South Dakota public policy. Id. (citing Friesz v. Farm & City Ins. Co., 619 N.W.2d 677, 680-81 (S.D. 2000)).

When interpreting insurance policies, "a court may not 'seek out a strained or unusual meaning for the benefit of the insured.' " Ass Kickin' Ranch, LLC, 822 N.W.2d at 727 (citing Rumpza v. Donalar Enters., Inc., 581 N.W.2d 517, 521 (S.D. 1998)). "The language of an insurance contract is 'construed according to its plain and ordinary meaning . . . .' " Berkley Reg'l Specialty Ins. Co. v. Dowling Spray Serv., 860 N.W.2d 257, 260 (S.D. 2015) (citing St. Paul Fire & Marine Ins. Co. v. Schilling, 520 N.W.2d 884, 887 (S.D. 1994)).

Plaintiff's reading of the interplay between the Facility and Home benefits would produce "a strained or unusual meaning for the benefit of the insured." Ass Kickin' Ranch, LLC, 822 N.W.2d at 727. The policy's definition of "home" refers to residences that do not provide medical care, such as the insured's home or a residential care facility. (Docket 45-3 at p. 9). The definition explicitly does not cover residences which provide medical care, such as hospitals and sections of nursing homes providing more than residential care. Id. The plain and ordinary meaning of the policy's definition of "home" distinguishes residential care provided to insureds—covered by the Home benefit—from additional services, such as medical care, which are covered by the Facility

11

benefit.   The policy further distinguishes between the two benefits by setting different payment rates for each.   (Docket 45-3 at p. 3).

Plaintiff's interpretation would entitle an insured to both the Home and Facility benefits whenever she resided in a facility providing something more than residential care.   This interpretation is unsupported by the language of the policy and would impermissibly favor the insured.   Plaintiff's objection is overruled.

### 4. The magistrate judge erred in finding plaintiff's argument that TLC provides services which may be impermissible under South Dakota law amounts to an absurdity

The magistrate judge also concluded TLC could not qualify as an Assisted Living Center under the policy because TLC cannot, under South Dakota law, provide the medical services the policy requires for benefits coverage.   (Docket 98 at p. 12).   The R&R found plaintiff's interpretation "amounts to an absurdity . . . ."   Id.

An insured under the policy is only entitled to benefits if she is certified as chronically ill by a licensed health care provider.   (Docket 45-3 at pp. 11, 15).   Chronically ill is defined as:

1. Being unable to perform (without Substantial Assistance from another individual) at least 2 Activities of Daily Living[4] for an expected period of at least 90 days due to a loss of functional capacity, or

2. Requiring Substantial Supervision to protect Yourself from threats to health and safety due to Severe Cognitive Impairment.

---

[4]Activities of daily living are feeding oneself, dressing, bathing, toileting, transferring ("[m]oving into or out of a bed, chair, or wheelchair[]") and maintaining continence.   Id. at p. 7.

12

Id. at pp. 7-8.  Substantial assistance is defined as standby assistance ("the presence of another person within arm's reach of You that is necessary to prevent . . . injury to You while You are performing an Activity of Daily Living") or hands-on assistance ("the physical assistance of another person without which You would be unable to perform the Activity of Daily Living").  Id. at pp. 11-12.  Substantial supervision is defined as "continual supervision" necessary to protect an insured suffering from "Alzheimer's disease and similar forms of irreversible dementia."  Id.

South Dakota regulations state residential living centers, such as TLC, "may not furnish or offer health care or habilitative care to persons of any age."  ARSD 44:23:01:05.  Guidelines issued by the South Dakota Department of Health forbid residential living centers from assisting residents with maintaining continence, toileting and transferring. (Docket 55-2 at p. 1).  The guidelines require residents of residential living centers to be "independent, capable of self-preservation, able to self-administer medications, and able to self-direct all activities."  Id.

Plaintiff argues the guidelines are contradictory and not authoritative.  (Docket 100 at p. 11.)  In plaintiff's view, any resident of a residential living center is not independent.  (Docket 93 at pp. 33-34). Plaintiff notes TLC sought the advice of Department of Health officials to maintain compliance with the guidelines.  Id.  Plaintiff appears to argue the guidelines cannot be a basis for determining whether TLC can provide

the services required by an Assisted Living Center because the guidelines lack sufficient clarity.

The Department of Health has the authority to issue binding rules concerning the operation of residential living centers. SDCL § 34-12-32. The Department of Health issued a binding rule prohibiting residential living centers from offering health or habilitative care. ARSD 44:23:01:05. The Continental policy requires Assisted Living Centers to offer habilitative care, such as assisting with activities of daily living. (Docket 45-3 at pp. 11-12). TLC cannot qualify as an Assisted Living Center under the policy without violating South Dakota law. Plaintiff's interpretation would create an absurdity and must be rejected. Ass Kickin' Ranch, 822 N.W.2d at 727. The court finds the magistrate judge did not commit error in this portion of her analysis. The court overrules plaintiff's objection.

### 5. Whether the magistrate judge erred because plaintiff would be entitled to payment under the Home benefit for TLC's residential care services

Plaintiff argues she is entitled to payment under the policy's Home benefit for her stay at TLC under the R&R's reasoning. (Docket 102 at pp. 39-41). For that reason, even if the court were to find that TLC does not qualify as an Assisted Living Center under the policy, plaintiff argues summary judgment should not issue in favor of defendants.

When a matter is referred to a magistrate judge, the parties are "required to present all of [their] arguments to the magistrate judge, lest they be waived." Ridenour v. Boehringer Ingelheim Pharm., Inc., 679

F.3d 1062, 1067 (8th Cir. 2012). Plaintiff raised this claim for Home benefits for the first time in her objections to the R&R. Because this argument was not presented to the magistrate judge, it is waived. Plaintiff's objection is overruled.

**ORDER**

The court finds the magistrate judge's report and recommendation to be an appropriate application of the law as supplemented and modified by this order. Based on the above analysis, it is

ORDERED that plaintiff's objections (Docket 102) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 98) is adopted as supplemented and modified.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Docket 45) is denied.

IT IS FURTHER ORDERED that defendant Continental Casualty Company's cross-motion for summary judgment (Docket 50) is granted.

IT IS FURTHER ORDERED that defendant Long Term Care Group, Inc.'s motion to join defendant Continental Casualty Company's cross-motion for summary judgment (Docket 53) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) is dismissed with prejudice.

Dated September 19, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE